Mr. Justice Story
 

 delivered the opinion of the Court, and after stating the proceedings in the Court below, proceeded as follows :
 

 The first point upon which the cause was argued, respects the tract of land on the Tenederah River. It appears-from the evidence that this tract of land, containing 9,050 acres, was conveyed by Col. Cro-ghan to Michael Gratz, by a deed bearing date on the 2d of March, 1770, for the consideration expressed in the deed of£l ,800. The deed is upon its face absolute, and contains the covenants of general warranty, and for the title of the grantor, which are usual in absolute deeds; but are unnecessary in deeds of trust. At the time of the execution of the deed, Col. Cro-ghan was in the State of New-York, and Michael Gratz was at Philadelphia. The land was, after the death of Col. Croghan, and in the year 1795, sold by Michael Gratz, to a Mr. Lawrence, in New-York, for a large sum of money. The plaintiff contends that this conveyance made by Col. Croghan to Michael Gratz, though in form absolute, was in reality a conveyance upon a secret trust, to be sold for the benefit of, the grantor; and in this vietv of the cáse, he contends farther, that he is entitled to be
 
 *493
 
 aI1tw~d the full ~a1ue of the lands at the time that the present suit• was brought, upon the ground of a fraudulent or i'mp~oper breach of trust by the gra~itee, or at all events, to' the full amount of' the profits made' upon the sale in `1 79~, with interest up to the time of the .Döcree.
 

 ~roof of the original ~zistence of the trust in this case.
 

 The attention of the' Court will, therefore, be diiei~ted, in' thefirst place, to the consideration of the question, whether this~ Was "a conveyance iii tràst, and if sO, of what nathre that' trOst was; : and, in the next place, wh~th~r that trust `was ever ~a%vftilly disk charged or extinguished. If there be still a subsist-. ing trust, there'can be no doubt `that `the pláintiff~ is entitled :tO some relief. -. 0 -
 

 Ii appears-from the evidence that CoL. Croghan, and Bernard and Michael Gratz, were intimately acquainted with each other, and a variety of ~c-counts was settled .bet~ve~n them', from .the year 1769, to `a short perioti be~bre- the death .of..Cól. Croghan. During all'~this period, Col. Croghan appears to have had the most unbounded confidence in them; and particularly by his `will, made in June 1782,. a shott. time before his decease, he named them. among his executors,. and gave., to Michael Gratz. in' consideration qf services rendered to, him, live thousand aèrès' of land, and to his, daughter Rachel Gratz, one thousand acres of land on Charter Creek, with an election to take the same number of acres in lieu thereof, in' any ot~ier'lands belonging to the testátor. The situation `of the parties, therefore, was one in which secret trusts might, probably, ex~ 1st, from the pecuniary enibarrassmeàts' in which
 
 *494
 
 Gol. Croghan appears to have been involved, as well as from his extensive land speculations. And, in point of fact, some portions of his property were conveyed to one or both of the Messrs. Gratz, upon express and open trusts.
 

 Still, however, the burthen of proof to establish the trust in controversy, lies on the plaintiff. The. circumstances on which he relies are, in our judgment, exceedingly strong in his favour; and sufficient to repel any presumption against the trust drawn from the absolute terms of the deed. In an account which was settled at Pittsburg, in May, 1775, between Bernard and Michael Gratz, and Col. Croghan, is the following item of credit:
 

 “ August,
 
 1774. By cash received of Howard, for 9,000 acres of land atTenederah, sold him for £850 15s. New-York currency, is here, - - - - £797 12 6
 

 Interest on £797 12s. 6d. from August, 1774, to May, 17.75, is eight months, at 6 per cent. - - 31 18 1
 

 £829 10 7
 

 There is no question of the identity of the land here stated to be sold to Howard, with the tract conveyed to Michael Gratz by the deed, in 1770. If the conveyance to Michael Gratz had been originally made for a valuable consideration then paid, it seems utterly impossible to account for the allowance of this credit upon any sale at a subsequent period. It seems
 
 *495
 
 íq us, therefore, that, the only rational explanation of .ithis transaction is, that the conveyance to Michael Gratz, though absolute in form, was, in reality, a trust for the benefit of Col. Croghan.» What the exact nature of this trust was, it is, perhaps, not very easy now to ascertain with perfect certainty. ' It might have been a trust ¿to sell the lands for the benefit of Col. Croghan, and . to apply the proceeds in part payment of the debts due from him to Bernard pnd Michael Gratz ; or, it might have been a sale of the lands directly to Michael Gratz, in part payment of the same debt, at a price thereafter to be agreed upon, and fixed by the parties; and, in the mean time, there would arise a resulting trust, in favour of Col. Croghan, by operation of law.
 

 Time, which buries in obscurity all human transactions, has achieved its accustomed effects upon this. The antiquity of the transaction — the death of all the original parties, and the unavoidable difficulties as to evidence, attending all cases where there are secret trusts and implicit confidences between the parties, render it, perhaps, impossible to assert, with perfect satisfaction, which of the two conclusions above suggested, presents the real state of the case. Taking the time of the credit only, it would certainly seem to indicate that the trust was, unequivocally, a trust to sell the land. But there are some other circumstances which afford considerable support to the other conclusion. Upon the back of an account between B. & M. Gratz, and Col. Croghan, which appears to have been rendered to the latter, in December, 1769, there is a memoran
 
 *496
 
 dum in the hand-writing of Col. Croghan, in which he enumerated the debts then due by him to. B. & M, Gratz, amounting to £1,220 Is. 2d. and then adds the following words:
 
 li
 
 paid of the above £144 York currency, besides the deed for the land, on the Te-nederah River, ,9,000 acres patented.” This memorandum must have been made after the conveyance of the land, to M. Gratz, and demonstrates that the parties intended it to. be a part payment of the debt due to B.& M. Gratz, and not a trust for any other purposé. The circumstance too, that the word “paid”is,Used, strpngly points to a real sale to M. Gratz,. rather than, a conveyance .for sale-to any third person. Add if the sale .was to be' to M, Gratz, at a price thereafter, to be fixed between the parties, the transaction could not be inconsistent with the terms of the credit, in the account of 1775.. It will be recollected that M. Gratz resided at Philadelphia,, and the conveyance was executed by Col. Croghan at Albany. There is no,evidence that the consideration stated in the deed óf £1,80(0, i or any other consideration, was ever agreecTupon between the parties ; and the circumstance that no sum is expressed in the memorandum of.Col.' Groghan, shows, that at the period when it was made, no fixed price for the land hMd been! ascertained, between the. parties. If, then, it .remained to bp fixed by the parties, whenever that value was agreed upon,. and settled in account, the resulting .trust in ,CoT. Croghan would be completely extinguished. It is quite possible, and certainly consistent with the circumstances in proof, thatrB. & M. Gratz might pot have been acquainted with the
 
 *497
 
 real value tf the land, or might be unwilling to take it' .at'any- other value than what, upon a sale, they might find could be realiied. From the situation. of Col. Croghan, his knowledge of the lands, and his extensive engagements in land speculations, igno-tancé of its value can scarcely be imputed to him. If, therefore, M. Gratz afterwards sold it to Howard, and Col. Croghan ivas satisfied, with the price, there is nothing unnatural in stating the credit in the manner in which it stands in the account in. 1775c it would agree with such facts, and would by no> means repel the presumption, that the land was not originally intended to be sold to M. Gratz. It would evidence no moré than that the parties were wiling that the sate so made, should be considered the Standard of the value; and-that M. Gratz‘should, upon his original'purchase, be charged with the sanie price for which he sold. Upon this view of the case, the resulting trust would be extinguished by the consent of the parties, arid rib Wánt of good faith could be fairly imputed to either'.
 

 in what ca~u the Iap~e of time will bar a trust.
 

 But it is said that therfe is no proof that any such purchasé was ever made by Howard ; and the trust being once established, the burthen' of proof is shifted upon .the other party, to show its extinguishment; and if this be not shown, the trust travels along with the property and its proceeds dotvn to the present tinie.
 

 It is certainly true, t~at length of time is no bar to a trust clearly established; and in a case wh~re fraud is imputed and proved, length of time ought not,
 
 *498
 
 upon principles of eternal"justice, to be admitted,:to repel relief. On the contrary, it would, seem that the .length of time, during which the; fraud, has. been successfully concealed and practised,' is rather an aggravation of the offence^ and calls more loudly upon a Court of equity to grant, ample and decisive relief. But length of time necessarilyw obscures all human evidence; and as it thus removes from the parties ajl the immediatemeans to verify -the nature of the original transactions, it operates by way of presumption, in . favour of innocence, and against' imputation of fraud. It would be unreasonable, after a great length, of time, to require exact proof of all the minute circumstances of any . transaction, or to expect a satisfactory explanation of every difficulty, real or apparent, with which it may be incumbered. The most that can fairly, be expected in such cases, if the parties are living, from the frailty of memory, and human infirmity, is,, that the material
 
 facts can
 
 be given with certainty to a common intent; and, if the parties are dead, ánd the cases rest in. confidence, and in parol agreements,'the most that we. can hope is to arrive at probable conjectures, and to substitute general presumptions of law, for exact knowledge. Fraud, or breach of, trust, ought not lightly to be imputed to the living ; for, the legal presumption is the other way; and as to the dead, who are not here tp answer for themselves, it would be the height of injustice and cruelty to disturb, their ashes, and violate the sanctity of the grave, unless the evidence of fraud be clear, beyond a reasonable doubt.
 

 Now, disguise the present case as much as we may,
 
 *499
 
 and soften the harshness of the imputation as much as we please, it cannot escape our attention, that if the plaintiffs case be made out, there was a meditated breach of trust, and a deliberate fraud practised by M. Gratz, or Bernard Gratz, with the assent of M. Gratz, upon Col. Croghan. If the sale to Howard was merely fictitious, it was an imposition upon Col. Croghan, designed to injure his interest, and violate his confidence. If the fraud were clearly made out, there would certainly be an end to all inquiry as to the motives which could lead to so dis-honourable a deed between such intimate friends.. But the fraud is not clearly made out; it is inferred from circumstances in themselves equivocal, and from the absence of proofs, which it is supposed must exist, if the sale were real, and could now be produced.
 

 In the view which the Court is disposed to take of this case, it must consider that Howard was a real, and not a fictitious person. It is then asked, why are not the facts proved who Howard was, where he lived, and the execution of the deed to him. It is to be recollected that this proof is called for, about fqrty years after, the original transaction ; when all the parties, and all who were intimately acquainted with the facts, are dead. It is called for, too, from persons^ some of whom were unborn, and some very young at the period to which they refer. They cannot be supposed to know, and they absolutely deny, all knowledge of the facts. What reason is there to suppose that Col. Croghan did not know who Howard was ? He had a deep interest in
 
 *500
 
 the value of the property, and could nqt .be. presumed to be indifferent to such inquiries, as every consider* ate man would be likely to make, in such á casé.-And after this lapse of,tinté, it is fair to presume^ that he did know the purchaser, and was satisfied with the purchase. But it is said that no deed is produced. . Now, it does not necessarily follow, that if a sale was made to .Howard, that the contract was consummated by an actual conveyance of the? land; If M. Gratz was
 
 the bona fide
 
 owner of the band, he mightsell it to. Howard by. an executory contract; and take a bond or other security for the purchase money, and from a failure to comply with the contract, M. Grá z might afterwards have refused to give a deed tc Howard; And in this case, if in the intermediate time the settlement was made with Col. Croghan, the credit must have been allowed in that account as it stands, and having been once allowed, M. Gratz could not, .on á recision of the sale, have been entitled to countermand that credit. He would have been bound to take the land at the sum which he had . elected . to allow for it, and for which he had sold it. On the other hand, supposing a deed actually to have passed to Howard, the latter may have.become dissatisfied with his bargain, or have failed to.pay the consideration money, and have yielded it back to Gratz, and dissolved .the purchase. Bur this circumstance could not have varied the situation of-Gratz in respect to the settlement with Col, Croghan. All that was important, or useful, or necessary., as between them, upon.the supposition that the trust was merely a resulting trust, iintil the price
 
 *501
 
 was fixed, was, that the price should have been satisfactorily ascertained and agreed to between them. In this view of the transaction, there could be no ground to impute fraud to M. Gratz; nor could his conduct involve a violation of trust. In the absence of all contrary evidence, is it not just, is it not reasonable, to presume such to have been the reality of the case ? That there is no evidence to the contrary, may be safely affirmed.
 

 In addition to this, it may be asked, whether M. •Gratz had any adequate motive for practising a-deception in this case. Men do not usually act under circumstances such as are imputed to M. Gratz, unless from some strong inducement of interest. It cannot be presumed that .any man of fair character, such as M. Gratz is proved to have been, could perpetrate a fraud or deception without some motive that should overbalance all the ordinary influence of prudence and honour. If there be any thing beyond all doubt established in this case, it is, that the value of the land, ás fixed in the account of 1776, was its full value. It is proved by public sales of adjoining tracts, at the very period when Howard is asserted to have purchased the land; and so. far from there being any chance of an immediate rise in value, the state of the country, on the very eve of the revolutionary war, forbade the indulgence of every such hope, and must have dissolved every dream of speculation. As far, then, as we can investigate motives, by referring to the general principles of human action, there does not seem to have been any motivd for disguise or concealment on the part of Michael
 
 *502
 
 Gratz. to wards Col. Crogban. Tbe. reasonable conclusion, therefore, would certainly be, that no such disguise or concealment was practised.
 

 There is one circumstance also which has been thought to have thrown some cloud over this part of the case, that upon the opinion already indicated, would admit of a favourable exposition. It is this : In the possession of M. Gratz, a counterpart of the account of 1775 is found, in which the word
 
 Howard
 
 is crossed out with a pen, but so that it is perfectly legible, and the name of Michael Gratz, is, in his own handwriting, written over it. The writing seems to be of great antiquity, and supposing that there was a real sale to Howard, which was afterwards abandoned, it is not unnatural that M. Gratz should, after ‘ the event, have communicated the fact to CoL Croghan, and with his consent, altered the. account, so as to conform to it. Or, the interlineation might have been made in the account, after the failure of the contract with Howard, in- order to show against which of the firm of B. & M. Gratz this sum ought to be charged, in the adjustment of their partnership concerns. It adds some force to these considerations, that Col. Croghan continued, during the residue of his life, to entertain the same friendship and confidence in M. Gratz *, and this, at least, demonstrated his belief that the Tenederah lands had not been unjustly sacrificed by him.
 

 If we look to the subsequent conduct of M. Gratz, in relation to the Tenederah lands, his great expenses in making improvements on it, after thé year 1786, and his diligent attention to it, it leads to the
 
 *503
 
 conclusion.that he always considered himself as the real
 
 bona fide
 
 owner. His possession of it must have been known to the parents^of the plaintiff, whose mother was the heir of Col. Croghan ; and it is proved, that,his father, had.the most unreserved and frequent access to ¡the papers of Col. Croghan ; and that lie actually resided several years in Philadelphia, with the ,express view .of examining the estate, ;an& finally abandoned all hopes of deriving any benefit from the fragments that were left of. it. The very account. now produced by the plaintiff, by which this trust is brought, to light, .was delivered over , to him by the representatives of M. Gratz, among the other papers of Col. Croghan ; and yet, .if,there had been any thing false or foul in the transaction,, it seems almost incredible that M. Gratz, into whose possession it came as'early as 1782, should have suffered it to remain as a monument of his bwn indiscretion, and an evidence of his want of good faith.
 

 If, on the other hand, the trust is to be. considered as a trust to sell, and apply the proceeds to the payment of the debt due to B. & M. Gratz, most of the considerations already stated will apply with equal force. If the sale was real, and Howard did not comply with the .terms of sale, Col. Croghan having knowledge of the fact, might have been wellsatisfied to let M. Gratz hold the land, at the price, thus fixed by the sale. To him, it must have been wholly immaterial who was the purchaser, if the full value was obtained; and that it was obtained, in Col. Cro-ghan’s own judgment, seems undeniable. The only
 
 *504
 
 question is, whether such knowlege can be inferred : and after such a length of time, under all the circumstances of this case, we are clearly of opinion that it ought to be inferred. Col. Croghan had it in his power to make inquiries on the subject; if he did, and was satisfied, his acquiescence was
 
 conclusive",
 
 if he did not, he considered that the sale, as between himself and Gratz, was consummated when the price was fixed, and was willing that the trust should be deemed extinguished forever. If, after the lapse of forty years, and the death of all the original parties, we were to come to a. different conclusion, it would be pressing doubtful circumstances with uncommon rigour against unblemished characters ; where the confidence reposed was so intimate, that the whole evidence could not be presumed to be before us. We should indulge in opinions which might be erroneous, and might, in an attempt to redeem the plaintiff from a conjectural fraud, inflict upon others the most gross injustice. We think, therefore, that the true and safe course is to abide by the rule of law, which, after a lapse of time, will presume payment of a debt, surrender of a deed, and extinguishment of a trust, where circumstances may reasonably justify it. The doctrine in
 
 Hillary
 
 v. Waller, (12
 
 Vez.
 
 261. 266.) on this subject, meets our entire approbation. It is there said, that general presumptions are raised by the law, upon subjects of which there is no record or written instrument, not because there are the means of belief or disbelief, but because mankind, judging of matters of antiquity from the infirmity and necessity of their
 
 *505
 
 situation must, for the preservation of their property and rights, have recourse to some general principle, to take the place of individual and specific belief, which can hold only as to matters within our own time, upon which a cone" us:jn can be formed from particulár and individual knowledge. In' oür judgment, the trust in the Tenederah lands, such as it was, must be now presumed to have been extinguished by the parties, in the life-time of Col. Cro-ghan. There is no ground, then, for relieving the plaintiff, as to this part tif his claim.
 

 
 *504
 
 Effect of length of time in raising a legal and equitable presumption of the extinguishment of a trust, payment of a debt, &c.
 

 
 *505
 
 The M'Ilvaine bond and judgment.
 

 The remaining point in this case respects the M‘11- °
 
 r
 
 r /• ¶* ■ vainebond and judgment. On the 30th of March, 1769, Col. Croghan gave his. bond to Wm. Mál-vame, for the sum of £400, which debt, by the will of M‘Ilvaine, became, on his death, vested in his widow, who afterwards intermarried with John Clark. A judgment was obtained upon this bond against Col. Croghan, in the name of Wm. Hum-phreys, executor of M‘Uvaine, in the Court of Common Pleas, in Westmoreland County, in Pennsylvania, at the October term, 1774-, upon which a /?,
 
 fa.
 
 issued, returnable to the April term of the same Court, in 1775. On the 8th of March preceding the return day of
 
 the fi. fa.
 
 Bernard Gratz purchased this judgment from Clark, and received an assignment of it, for which he gave his own bond for £300 and interest. About this period, Col. Croghan appears to have been considerably embarrassed in his pecuniary affairs, and several suits were depending against him. Bernard Gratz having- failed to pay his bond, was sued by Clark, and in 1794, a judg
 
 *506
 
 ment.was recovered against him for £89 6s. lOd. the balance then due upon the bond, which sum was af-terwards paid by M. Gratz. The judgment of Hum-phreys against Col. Croghan, was kept alive from time to time, until 1786, and in that year, on the death of .Humphreys, Joseph Bloomfield was appointed administrator
 
 de bonis
 
 non, with the will annexed, of Humphreys,. and revived the judgment.; and it was kept in full force until it was finally levied on certain lands of-Col. Croghan, as hereafter stated. Some time in/the year 1800, Bernard Gratz assigned this judgment to his nephew Simon . Gratz, one of the defendants, partly in consideration ofma-tural affection, and partly'-in consideration of the above sum of £89 6s. lOd. paid, towards the discharge of-the bond of Bernard Gratz, by his (Simon’s) father. Michael-Gratz. Simon Gratz having thus become the beneficial owner of the judgment, . proceeded, to issue executions on the same, and at different times between September, 1801, and November, 1804, caused the. same executions to be levied on sundry tracts of land of.Col. .Croghan, in Westmoreland and Huntington counties, of five of which he, being the highest bidder at the sale, became the purchaser. The tracts so sold, contained upwards of 2,000 acres, and were sold for little more than 1,000 dollars. The title to some, part of the land so sold, appears to be yet in controversy.
 

 Shortly after the assignment of the M'llvaine judgment to Bernard Gratz, on the 16th of May* 1775, Col. Croghan, (probably having knowledge of the assignment, though; the fact does not appear,)
 
 *507
 
 by two deeds of that date, conveyed to JB. Gratz, for a,valuable consideration expressed therein, about 45,000 acres of land. Á declaration of trust was executed by Bernard Gratz, on the 2d of June, 1775, by which he acknowledged, that tnese conveyances were in trust to enable Bernard Gratz to .sell the same, and with the proceeds to discharge certain enumerated debts of Col. Croghan, and among them, the debt due on the M‘Ilvaine bond, and to account for the residue 'with Col. Croghan.
 

 The subject of thé M£Ilvainé judgment was very minutely considered in the Court below,, by the learned judge who decided the cause, and the principal grounds on which the plaintiff relied for a decree were so fully answered there, that a complete review, of them does not seem to be necessary in this Court.
 
 a
 
 It is observable, that the bill charges that
 
 *508
 
 the assignment of this judgment was secretly procured by Bernard or Michael Gratz, or both of them, after the death of Col. Croghan, and that nothing
 
 *509
 
 was due upon the judgment; or if any thing was due, it was paid upon the assignment out of moneys belonging to the estate of Col. Croghan. The bill
 
 *510
 
 asserts no other ground . for relief on this subject. The proof, in the cause completely establishes the material charges in the bill to be false. The assign
 
 *511
 
 ment was made to Bernard Gratz, in the lifetime of Gol. Croghan ; the judgment never was paid or sa-tishéd by Col. Croghan, or out of his estate; and no fraud is pretended in the bill to have taken place in the levy of the judgment, on Col; Croghan’s lands, independently of the legal inference-to be deduced from the facts charged in the bill. If Bernard Gratz was not, at the time, in the situation of a trustee of Col: Croghan, there, is no pretence to say, that he might not rightfully and lawfully purchase the judgment. And there are very strong reasons to believe, that it -was purchased with the knowledge, and for the rfelief of Col. Croghan. It: was somewhat insisted upon in the Court below, that by a power of attorney of the 10th of July, 1772, Col. Croghan constituted Bernard and Michael Gratz trustees of .all his lands, with unlimited power to sell them and pay off his debts, But this ground has not been insisted upon here, and, indeed, for the best reasons. There is the strongest presumptive evidence, that this power was never acted upon, or was revoked, and held a nullity before the time of the assignment in question..
 

 The ground that has been principally relied upon here, is, that Bernard Gratz having taken the two trust deeds in Í775, already referred to, in trust for the payment of this very debt out of the proceeds of the sale of the lands conveyed by those deedsj could not proceed to satisfy the judgment out of any other lands, without notice to Col. Croghan, or his representatives. But there is not the least evidence in the cause to show, that any óf the lands
 
 *512
 
 conveyed by either of these deeds ever turned out productive. And there are the strongest presumptions in the case, and . it seems, indeed, to be on all sides conceded, that either the title to these lands wholly failed, or became altogether unsaleable. There is no reason to suppose that these facts lay more peculiarly in the knowledge of one party than the other ; and if the trust became utterly frustrated and inert, there could not be any necessity of giving a formal notice, that Bernard Gratz must look to other property, and particularly to the property in Westmoreland county, upon which alone, it is understood by- the laws of Pennsylvania, the lien of the judgment attached.
 

 There is no proof that any assets ever came to the hands of Bernard Gratz or Michael Gratz, out of which this judgment was, or could be satisfied. Bernard Gratz was alone interested in it; and it was kept alive from time to time, until the levies in question were made. It will be recollected also, that even if. Michael Gratz were disposed to connive, after the death of his brother, in the levies of his son Simon, William Powell, who was another executor, had no such motive. And, it is not shown that, by any law or usage in Pennsylvania, any notice is required to be given to any other persons than the personal representatives of the deceased, of the execution of any such judgment on lands, so that laches could be fairly imputed to the executors for neglect to give notice, to the heirs of Col. Croghan of the sale. The very length of time during which this judgment remained unsatisfied, is evidence of the desperate state
 
 *513
 
 of Col. Croghan’s affairs; and the record abounds with corroborations of the great embarrassments attending all his concerns, and of apparent insolvency at the time of his decease. No evidence has been submitted to us to establish that the levies-on the lands, under the judgment, were fraudulently conducted by the sheriff, or that they did not sell for the full value of the title., such as it was, which Col. Croghan had in them. It appears that the title, as to some part of them, is still in controversy. And Simon Gratz, the judgment creditor, had as much right, if the sale was
 
 bona fide
 
 conducted, to become the purchaser, if he was the highest bidder, as any other person.
 

 Decree, as to the proceeds pf the Tenederah lands, reversed.
 

 Upon the whole, the majority of the Court entirely concurs, in the opinion of the Circuit Court upon this part of the case. But, as to the decree respéct-ing the proceeds of the Tenederah lands, we are all of opinion that it ought to be reversed.
 

 ff the Court had felt any doubts as to the merits, it would have been proper to have given serious consideration to the very able argument made, at the bar, respecting > the defect of proper partiéá to the bill. But, as upon the merits, the Court is decidedly against the plaintiff, it seemed useless to send back the cause upon this objection, if it should he found tenable, when, after all, the case .furnished ho substantial ground for relief in equity.
 
 a
 

 Decree. These causes, being cross appeals,.
 
 *514
 
 came un to be heard at the same'time, and were argued by. .counsel. On consideration whereof, it is ordered and decreed, that the decree of the Circuit Court for the District of Pennsylvania in the premises, .bej and the same is hereby reversed. And this Court proceeding to pass such decree as the said Circuit- Court should have passed, it. is farther ordered, and decreed, that the complainants, bill, as te all the matters contained therein, be, and the same is hereby dismissed; and that, a mándate issue to the said Circuit Court, to dismiss the samé accordingly, without costs.
 

 a
 

 The following is that part of the opinion of Mr. Justice Washington in the Court below, here alluded to :
 

 “ Upon these facts, it is contended by the complainant’s counsel, that B. Gratz ought to be considered by this Court, as having purchased the above judgment with the trust funds, and, consequently, for the benefit of G. Croghan ; and that «ven if it was purchased with his own money, still, being a trustee for Croghan, the purchase should be considered as having been made for his benefit, entitling B. Gratz to claim no more than the sum which he actually paid, and to retain the same but of G. Croghan’s estate, the whole of which is charged, with the payment of his debts. That Simon Gratz, being an assignee of this judgment, with notice of the trust, and without a.valuable consideration paid.for the same, can stand in no better situation than the assignor did, and ought, therefore, to be .treated as a trustee for the .estate of G. Croghan, of the lands which he
 
 *508
 
 purchased under the executions issued on that judgment, and be entitled to claim merely the sum actually paid by B. Gratz, with interest.
 

 It is to be observed, in the first place, that there is pot the slightest evidence on which to ground a presumption, that this judgment was purchased with trust funds. B. Gratz gaye his. own bond for the 300 pounds, at which time he and M. Gratz were considerably the creditors of G. Croghan-: and it further appears by the exhibits in the cause, that the accounts between these parties, were regularly settled from time to time, leaving at each settlement a balance against G. Croghan.
 

 Neither did any funds arise from the trust property, no part of the same having at any time been sold
 
 by the
 
 trustee.
 

 A3 to tbe argument predicated upon the admission, that the purchase was made upon the credit and with the funds of B. Gratz, 1 hold it to be altogether untenable. B. Gratz became • the purchaser some, months before the date of tbe .conveyances to him, of .the 46,000 acres of land, and I am yet to learn upon what principle of equity it is,, that a creditor, who after he i* so, becomes a trustee for his debtor, does by that act impair or affect rights which he had antecedently acquired against him. ¡ admit the 'pundness of the doctrine laid down by the complainant’s counsel, that if a trustee, executor, or agent, buy in debts due by his
 
 cestui que trust,
 
 testator, or principal, for less than their nominal amount, the benefit gained thereby belongs not to him, but to. the person for whom he acted. A Court of equity will not permit a person, acting as a trastee, to create in himself an interest opposite to that of his
 
 cestui que trust
 
 or principal. But this doctrine is inapplicable to the case of a fair-
 
 bona fide
 
 creditor, who became so, prior to the assumption of his fiduciary character. In such a case he is entitled to claim the lull amount of what was due from his
 
 cestui que trust,
 
 &c. and the latter has no right to inquire how much
 
 *509
 
 the former paid for it .; so, too, the trustee, &c. may pursue all legal remedies for enforcing payment of the debt, which would have been open to him if he had not become a trustee.
 

 It is said, however, that the declaration of trust of the 2d of July, 1775, contains a promise to discharge this very debt out of the trust property, as soon as the same could be disposed of. But it was not disposed of, and there are the strongest reasons for believing that it was. altogether unsaleable.
 

 Independent of the doubts which clouded the title, it would seem sufficient to observe, that B. Gratz had the strongest temptations to sell, and even to sacrifice this property, if it had been possible to dispose of it upon any terms.
 

 It is further contended, that the power of attorney given by G. Croghan, to B. & M. Gratz, dated the 10th of July, 1772, constituted them trustees of all his lands, with unlimited power to sell them, and to pay off his debts. It is in this part of the ease, that I experience the difficulty of deciding satisfactorily to myself, in' consequence of the antiquity of these transactions, and the death of all those who might have explained them. What became of this power of attorney, and why it was never acted upon, are questions which no evidence in the cause enables me to resolve. There are, however, strong reasons for presuming, that the powers vested in these agents, were found unproductive of any useful results; and, that the instrument which bestowed them was afterwards delivered back to G. Croghan, or remaining with the Gratis, was considered by all the parties as a blank papen This conjecture, is strongly countenanced by the fact, that this paper, as. well as the deeds, of May, 177fc, was found amongst the papers of G. Croghan, after bis death. These very deeds furnish themselves the most persuasive evidence in support of this presumption. For, if the general
 
 power
 
 to sell thesAole-of G. Croghan’s lands, continued in force up to the year 1775, there could, have been no necessity for giving to one of those agents, an authority to sell a
 
 part
 
 
 *510
 
 of them. The fact, that no part of those lands was sold by the agents, or by Croghan himself, without a complaint having been uttered by the latter, that appears, is nearly conclusive to prove that they were unsaleable.
 

 Another point insisted upon by the complainant’s counsel under' this head is, that G. Croghan was not in reality a debtor to M'llvaine, inasmuch as there was found amongst Croghan’s papers, a bond of M‘ilvaine to him, dated the 5th of March, 1769, with condition that M'llvaine should by a certain day re-convey to Croghan, certain lands lying in Virginia, which Cro-ghan had conveyed to M‘Ilvaine, in trust for the payment of a particular debt, or in case it should not be in his power to make such conveyance, then .to pay to Croghan- the sum of 400/. It was contended, that this bond being found uncancelled .amongst the papers- of the obligee, proves that neither pf the conditions had been performed.
 

 The short, but conclusive answer to this argument is, that the condition of this bond was to'be performed in the year 1770, and that if it was broken by the failure of M'Uvaine to make the re-cohveyance, M‘Ilvaine became in that year a debtor to G. Croghan, in the sum of 400/. the equivalent; yet Croghan suffered judgment to pass against-him, and execution to issue in the year .1775, after which he lived about seven years, without having brought-a suit on the bond, or asserted, in any manner whatever, a right to the money. If,.after a lapse of so many years, and under these strong circumstances, the Court is not bound to presume against the existence of this debt, I know of no instance in which such a presumption ought to be made. If in truth the debt was really due, the charge of neglect is fairly imputable to Croghan, but. not to bis executors. Upon the whole. I am of opinion, upon.this point, that the complainant is entitled to no relief.” 1
 
 Peters, jun. Rep.
 
 372.
 

 a
 

 Vide
 
 1 Peters,
 
 jun. Rep.
 
 364. S. C.