Johnson, J.
Upon the issues of fact, the court found in favor of plaintiff, and denied her relief because of the lapse of time and staleness of her equity.
The facts thus found clearly establish an equity in the *577 plaintiff to one-fifth of these lands, in 1834, and the question is, whether, by her laches, that equity has become stale.
The breach of trust did not consist in using these funds in making the purchase, for that the defendant had bound himself to do, nor in moving on the land and using it subsequently as a home, for that was manifestly beneficial to the children, but in wrongfully taking the whole title in his own name.
A trust resulted to the children in this title, to the extent the trust funds paid for the land.
And we may add that it is a trust which falls peculiarly within the province of a court of equity, not only because such trusts are exclusively of equity cognizance, but especially for the reason that the chancellor is the special guardian of infants, and watches over the administration of their estates with particular care.
As this cause of action arose prior to the civil code, the limitation of actions therein prescribed has no application.
¥e must inquire, therefore, what were the rules applicable to such cases prior to the code, in a court of equity.
The statute of limitations of 1831 (Swan Stat. 1841, p.. 553) did not in terms apply to suits in equity, but only to-actions at law.
Only so far as courts of equity adopted and followed the limitations fixed at law for analogous actions, can we look, to this act, or apply its provisions in an equitable action.
This subject has been ably considered, and was well settled in numerous cases, prior to the code. Kane v. Bloodgood, 7 Johns. Ch. 90; Hoveden v. Lord Annesly, 2 Sch. & Lefr. 607; Tuttle v. Wilson, 10 Ohio, 24; Horton v. Horner, 14 Ohio, 437; Piatt’s Heirs v. Vattier, 9 Pet. 405; 2 Story Eq.; sec. 1521; Angell on Lim., chap. 35.
In all cases where there was a concurrent jurisdiction of the courts of law and equity for breaches of trust, the rule was well settled that the equitable action was barred, in the same length of time as the action at law.
Where it would, however, be in furtherance of manifest *578 injustice, equity would not, by mere analogy, allow the bar to prevail.
As was said in Bond v. Hopkins, 1 Sch. & Lefr. 430-435, by Lord Redesdale: “ The question is not, whether it shall operate in a case provided for by positive enactment of the statute, but whether it shall operate in a case not provided for by the words of the act, and to which the act can apply only so far as it governs decisions in courts of equity — that is, whether it shall prevent a court of equity doing justice according to good conscience, where the equitable title is not barred by the lapse of time, although the legal title is so barred.” 2 Story Eq. Jurisd., sec. 1521, note and cases; Gratz v. Prevost, 6 Wheat. 481.
The leading case in this country is that of Kane v. Bloodgood, 7 Johns. Ch. 90, where all the authorities are ably reviewed. The conclusions there reached were generally ¿accepted as the true solution of the vexed question.
The law, as deduced from an examination of the cases, 7may be thus stated:
That the statute of limitations did not apply in courts -of equity to technical or direct trusts, except in either of ¡■the’following classes of cases :
First. When there was also a remedy at law to which a limitation was fixed. In such case the equitable action to -enforce the trust has a like limit.
In other words, the statute of limitations applies to those ■trusts which permit of remedy for the breach either at law ‘Or in equity; that is, where there is a concurrent jurisdiction.
Second. In cases of trusts, where there is an open denial • or repudiation of the trust brought home to the cestui que drustent, which requires him to act, and the time afterward elapsed amounts at law to a bar.
Third. When circumstances exist which, with the lapse • of time, raises the presumption that the trust has been dis-charged or extinguished. Phillips v. The State, 5 Ohio St. 122.
.Length of time is no bar to a trust clearly established; *579 and where fraud is imputed and proved, length of time ought not to exclude l’elief; but as time necessarily obscures all human evidence, and deprives the parties of the means of ascertaining the nature of the original transaction, it operates by way of presumption in favor of innocence and against imputation of fraud.
And it has been held that the lapse of forty years, and the death of all the original parties, is sufficient to raise the presumption that the trust is extinguished. Gratz v. Prevost, 6 Wheat. 481.
To the first class belong all cases where there was a concurrent jurisdiction both at law and in equity.
In such cases equity by analogy followed the law. Kane v. Bloodgood, 7 Johns. Ch. 90; Angell on Lim. 35, and cases.
In the second class the rule is thus stated in Williams v. First Presbyterian Church, 1 Ohio St. 478, where it is said: “Although it is true, as a general rule, that, as between trustee and cestui que trust, lapse of time is no bar, yet it is equally true that where the former, with the knowledge of the latter, disclaims the trust, either expressly or by acts that necessarily imply a disclaimer, and an unbroken possession follows in the trustee, or those claiming under him, for a period equal to that prescribed in the act of limitation to constitute a bar, such lapse of time, under such circumstances, may be relied upon as a defense.”
To neither of these classes does the case at bar belong. A court of equity has exclusive cognizance of such action, and there is no pretense that there has been such a disclaimer.
This is not a trust when its breach authorizes an action at law. After the purchase and possession, both of which acts were consistent with the trust the defendant had undertaken, he committed such a breach by taking the conveyance in his own name. The remedy for this was exclusively in equity.
Neither was there ever any disavowal or repudiation of *580 the trust. His answer admits a trust in the money, and the court finds that it existed in the land.
He nowhere claims that his possession was openly and avowedly in repudiation of his trust relation to the property. Until he does so, the occupancy will be presumed to. be in fulfillment of the trust, and not in derogation of it. Such occupancy was consistent with that relation, and until disavowed by him, the statute would not begin to run.
In case of such disavowal, and future possession for twenty-one years under a claim of right, the equity would, as a general rule, perhaps be barred.
During the minority of these children the land was their home as well as his, used for their shelter and support.
His holding was that of a co-tenant, and head of the family for the common benefit of all its members.
The evidence does not warrant the assumption that he ever, during their minority or since, claimed to hold adversely to them.
But if we should regard his possession after this plaintiff became of age as adverse, which we do not think is authorized by the evidence, and should by analogy adopt the length of time as prescribed for real actions by the act of 1831, this claim would not have been barred, as the adverse possession since majority was less than twenty-one years before the action was commenced. Gibler v. Trimble, 14 Ohio, 343; Bowman’s Devisees v. Wather, 2 McLean, 376; Angell on Lim., chap. 33; Piatt v. Vattier, 9 Pet. 405.
The third class of trusts where lapse of time applies in courts of equity, is where the circumstances with the length of time creates a presumption that the trust has been discharged or extinguished.
What constitutes a stale equity is a vexed question hardly susceptible of an accurate definition. Length of time alone is not a test of staleness.
In Gibler v. Trimble, 14 Ohio, 323, the court say, at the end of the decision, on page 343 : “ Stale equities will not be enforced; when a party, having an equity, neglects to *581 enforce it, for a period which would constitute a bar at law, under the statute of limitations — in analogy to the statute —it will also be barred in equity.”
In Larrowe v. Beam, 10 Ohio, 498, on page 503, Judge Grimke says : “ If the party be guilty of laches in prosecuting his title, as would bar him if his title were solely at law, he shall be barred in equity.”
In Chalmondeley v. Clinton, 2 Jacob & Walker, it is said: “At all times courts of equity have, upon general principles of their own, even when there was no suitable bar, refused relief to stale demands, where the party slept on his rights and acquiesced for a great length of time.”
The rule is well stated in Smith v. Clay, 3 Brown Ch. 640: “A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights or acquiesced for a great length of time.
“ Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. ‘ Where these are wanting, the court is passive and does nothing ; laches and neglect are always discountenanced.’ ” Kane v. Bloodgood, 7 Johns. Ch. 93; Piatt v. Vattier, 9 Peters, 405, 415; Beckford v. Wade, 17 Vesey, 86; Barney v. Ridgard, 1 Cox Cas. 145; De Conche v. Savatier, 3 Johns. Ch. 190; Prevost v. Gratz, 6 Wheat. 481; Hughes v. Edwards, 9 Ib. 489; Higginbotham v. Burnett, 5 Johns. Ch. 184.
If we apply these principles to the circumstances of this case, together with the lapse of time, are clearly of the opinion that a court of equity ought not to presume that this trust has been discharged or abandoned.
During all the years of her minority the defendant stood in loco parentis to the plaintiff. He had been the husband of her mother since she was but a year old. They lived as one family. She was raised without education and subject to hard manual labor out of doors as well as in. He was harsh and rigorous in his treatment of his family. His relations with her mother culminated in a judicial separation by reason of his violence to her.
*582 She says:
“ One reason why I did not demand my share of the land sooner was that I was afraid Hinderer would be violent to my mother and abuse her about it. He was abusive to her, and very violent at times. I did not commence my suit until after mother separated from Hinderer on account of his abuse of her. Another reason I did not demand my share of the land long ago was that Hinderer often promised to make us three children equal in property with his own children. But after mother separated from him I knew there was no hope for his doing anything for me voluntarily, by will or otherwise. Soon after she left him my suit was commenced.
“ On cross-examination the witness further said that quarreling between her mother and Hinderer sometimes grew up about this property; a great deal of it was occasioned by mother wanting him to give us children our share of the land.”
In view of all the circumstances of this case, disclosed by the pleadings and evidence, such as the admitted equity in the money, the established trust in the land, the defendant’s repeated acknowledgment of the children’s claims, the parental relation he occupied, the good faith that that relation imposed, as well as other facts, we can not presume that this trust, so clearly established, was either abandoned or extinguished before this action was commenced.
After all hope of a peaceful-fulfillment of his duty had failed, but within twenty-one years after arriving at age} this action was commenced. .
The delay which did occur may readily be accounted for when we consider the plaintiff’s relation to. the defendant, her circumstances and surroundings, and her motives, as explained in her evidence.
“ It is always to be considered that it is a painful thing to take such proceedings as the present. They necessarily have a tendency to lessen affection between relatives, and delay ought not so seriously to prejudice the rights of the *583 parties as in the case of strangers.” Laver v. Fielder, 9 Jur. N. S. 190.
And in 2 Story’s Eq., sec. 1520, referring to the case cited, it is said: “And delay in instituting proceedings where the parties are members of the same family is not so strictly regarded as where they are strangers to each other.”
In addition to the specific prayer for a conveyance, which we find should be granted, there is a general prayer for “ other and farther relief as to the court shall seem right in the premises.”
This embraces an account of rents and profits. In taking such account, we think, in view of all the circumstances in the case, it would be inequitable to go beyond the commencement of the suit.
During the plaintiffs minority it was her home — used for the benefit of all. The occupancy-since she left the premises without demand of account, until her mother left them, may fairly be presumed to have been by her consent. Perry on Trusts, sec. 230 ; Picket v. Logan, 14 Vesey, 215.
Again, the lapse of time has propably obscured reliable evidence on which to found such account-.
Judgment of the district court reversed, and cause remanded.
Ashburn, J., dissented.