## ESTATE OF MARGARET ARMSTRONG, DECEASED.

[No. 2,054; decided December 12, 1883.]

Trustee—Use and Management of Funds.—An agent or trustee has no right to use the funds intrusted to him as his own, nor to mingle them with his own funds, without clear authorization; it is his duty to keep the funds separate and intact, and free from any liability such as he incurs in the use of his own moneys.

Trustee—Management of Funds.—An agent or trustee must pursue with exactitude the instructions given as to funds intrusted

with him, or show that his particular act was ratified with full knowledge on his principal's part as to the nature of the act.

**Trustee—Loaning Funds.**—Where an agent or trustee is instructed to "loan out" funds held by him, it means that he is to invest them for his principal's account, and to make an accounting to the principal of such investment. He is not authorized to borrow the funds for his own purposes.

**Trustee—Investment of Funds.**—Where confidence is reposed in a trustee to judiciously invest the funds in his hands, this confidence is abused when he places himself in the position of a debtor to the principal, without fully advising the latter of the risk he runs, and giving him an opportunity of knowing the hazard that the funds are subjected to.

**Where a Trustee to Invest has Made Himself a Debtor to His Principal,** and thereby subjected the funds to a risk and hazard, he must show that he fully advised his principal in the premises, in order to avoid responsibility for the loss his conduct may cause.

**Trust—Limitation of Actions.**—Where one occupies a fiduciary relation, the statute of limitations cannot avail as a defense. Lapse of time is no bar to a subsisting trust, clearly established.

**Trust—Limitation of Actions.**—Where one has occupied a fiduciary relation, the statute of limitations cannot be availed of, unless and until a demand on the part of the principal, and a refusal by the trustee, are shown.

**Trust.—The Following Language in a Letter Written by One Who has Collected** and holds moneys for another, establishes a trust: "It leaves a balance in your favor of $15,000, besides what has accumulated since the estate was fixed up, which I will loan out [at] about nine per cent, being the best I can do at present."

**Where It Appeared that a Special Administrator had been a Trustee** for the decedent in her lifetime, and there was a large balance at the time of decedent's death, for which he should be held accountable, and he has made no statement of his indebtedness or trust in his account rendered as special administrator, he should be charged with the amount of such indebtedness upon the settlement of his account.

In this case the record shows that Robert Stevenson filed an application for letters of special administration upon the twenty-first day of November, 1882, the petition alleging: That decedent, Margaret Armstrong, died at Foxlake, Dodge county, Wisconsin, on October 3, 1882, being then and there resident, and leaving estate in the city and county of San Francisco, within the jurisdiction of the court, consisting

of an undivided one-eighth (⅛) interest in the lot of land (and the improvements thereon) situated on the southwest corner of California and Montgomery streets, in the aforesaid city and county, and known as "Stevenson Block"; that the rents and profits of decedent's interest in said realty amounted to $150 a month; that petitioner was a brother of the decedent, and also agent for all the owners of said "Stevenson Block"; and that decedent left no will. Upon the filing of said petition and showing made, and in accordance with the prayer of the petition, the said Robert Stevenson was appointed special administrator, and upon the same day, to-wit: November 21, 1882, letters of special administration were issued to him by the clerk.

Thereafter, Maurice B. Blake filed a petition in the matter of the estate, to have a will of decedent admitted to probate, upon a copy of said will and of the probate thereof by a Wisconsin court (all duly authenticated); and after due proceedings the same was so admitted to probate upon June 5, 1883, and said M. B. Blake was appointed administrator with the will annexed of the estate of said decedent, and thereupon qualified on June 9, 1883. On July 17, 1883, the said administrator, Blake, filed a petition praying that a citation issue against the aforesaid Robert Stevenson, directing him to render an account of his special administration of said estate. Upon this petition citation was issued against Stevenson, returnable on July 26, 1887; citation was served, and on the return day the prayer for an account was granted.

On August 3, 1883, an "Account of Robert Stevenson, Special Administrator," was filed, showing that he received the sum of $385 rents from James W. Hart, collector for the "Stevenson Block," and that he paid out $133.45, leaving a balance amounting to $251.55; and with this account was filed a detailed account by the aforesaid James W. Hart, the agent and collector of all the rents for the owners of the said "Stevenson Block." On August 7, 1883, there were filed by the administrator, Blake, "Exceptions to Account of Special Administrator," contesting the said account filed August 3, 1883, on the grounds, first, that Stevenson has not charged himself with all the property of the estate coming

to his hands, for that on or about August 15, 1877, in decedent's lifetime, he collected, as her agent, a large sum of money and also other personal property, and an interest (undivided) in a parcel of real property, distributed to her as heir of one Andrew J. Stevenson, deceased; that large sums were afterward received as her agent in her lifetime, for rents of realty and interest and dividends on moneys and stocks; that said Stevenson never fully accounted to her for any of such property so received by him as aforesaid; that the amount of Stevenson's indebtedness cannot be stated, but is believed to exceed $20,000, and he has not accounted for any of it; second, the item for attorney fees of special administration is excessive; and prayed that the account presented be not allowed, but that said Stevenson be compelled to charge himself with the amount of his indebtedness and with all property that should be in his hands, or the proceeds of the same.

The facts proved before the court, and which led to the opinion in the case, can be best given as they were presented in the "Findings and Decision on Account of Special Administrator," drawn in conformity with the opinion and filed January 17, 1884, viz.: 1. That about August 15, 1877, said Robert Stevenson, as agent of said Margaret Armstrong, the decedent, took possession of the sum of $24,618.80 one-eighth interest in the lands and premises known as "Stevenson Block," and certain mining stocks, jewelry and furniture, distributed to her as one of the heirs of the late Andrew J. Stevenson, deceased. 2. That none of the said property so received by him is accounted for in his account as special administrator; but that the jewelry had been given to said Stevenson by the decedent; that the mining stocks had been, after rendition of the account, delivered to the administrator, Blake, and since the latter's qualification he has been in possession of the interest in the realty and of the household furniture. 3. That on August 15, 1877, there remained in Stevenson's hands, out of said amount of $24,618.80, the sum of $15,000 ($9,618.80 having been previously disbursed to his principal); and that said money was held and retained by him in a fiduciary capacity, upon the understanding that

he should loan out the same upon interest for the benefit of his principal, the aforesaid decedent, and account to her therefor. 4. That, without notice to his principal, and in violation of his duties as agent, he mingled the said sum of $15,000 with his own funds, and never kept them separate therefrom; that he did not loan out the money for her to others, but used it in all respects as his own, employing it in hazardous mining and stock speculations in his own behalf, by which means it was ultimately lost. 5. That he never paid to his principal any part of said $15,000, or the interest thereon, except the interest to October 1, 1878. 6. That no demand for an accounting of said moneys was ever made upon him by his principal, or refused by him; that he never informed her of the mingling and using of said moneys with his own, and such intermingling and use were never ratified by her, the said principal. 7. That from the fifteenth day of August, 1877, aforesaid, up to the date of his principal's death, viz.: October 4, 1882, he held and managed the property collected and received as aforesaid, as her agent, together with the rents, income and dividends thereof; and that he has not entered any of the said rents or dividends, or the disbursements connected therewith, in his account aforesaid, but has specified them in an exhibit filed in the estate September 21, 1883. 8. That for a considerable period the rents and dividends received by him were not paid over to his principal, but allowed to accumulate, and on January 1, 1881, there had so accumulated and remained unpaid net rents and dividends amounting in all to the sum of $11,727.67, with interest; that thereafter he paid over the current rents and dividends up to May 1, 1882, but subsequently there accumulated and remained unpaid in his hands, from net rents and dividends, the sum of $1,004.75. 9. That the same facts existed as to the rents and dividends, so received by him as aforesaid, as existed with reference to the principal and original moneys and property which came into his possession, as found in and by the third and fourth findings above. 10. That his principal died, and he, after petitioning therefor, was appointed the special administrator of her estate and duly qualified, and at and after such qualification he was

possessed of sufficient property to have realized and taken into his possession, as such special administrator, at least the sum of $1,004.75, aforesaid. 11. That after his qualification as special administrator he received and disbursed the moneys set forth in his account filed herein, and afterward paid over the balance therein stated to the administrator of the estate, M. B. Blake.

And, as conclusions of law, the court found: 1. That the indebtedness of said Stevenson to said decedent was not, nor any part of it, barred by section 339, Code of Civil Procedure, or the statute of limitations; 2. That the account should not be settled as rendered, but the said Robert Stevenson, as such special administrator, should be charged with the various sums of money and accumulations received by him, as set out in the findings of fact, with interest; and that a decree should be entered against him settling his account at a total balance of $37,218.74, due the estate of Margaret Armstrong, deceased, from him as special administrator thereof.

Alfred Wheeler, attorney for special administrator (Stevenson); afterward E. D. Sawyer, on the "Exceptions" to the account

J. M. Allen, attorney for Frederick James Armstrong, an heir at law.

M. C. Blake, attorney for Maurice B. Blake, the administrator with the will annexed, for the "Exceptions."

COFFEY, J. In the matter of the application for the settlement of the account of Robert Stevenson, as special administrator of the estate of Margaret Armstrong, deceased, the special administrator had no right to use the funds of the decedent as his own, nor to mingle them with his own funds, without clear authorization from her. It was his duty to keep them separate and intact and free from any liability such as he incurred in the use of his own moneys. He should have pursued with exactitude the instructions given as to them, or show that his act was ratified, with full knowledge on the part of the decedent of the nature of that act.

The evidence shows that the authority was to "loan out" the money, which seems to me to mean that he was to invest for her and to account therefor, and not to borrow it for his own purposes. Mrs. Armstrong reposed confidence in him to judiciously invest her funds, and this confidence was abused when he placed himself in the position of a debtor to her, without fully advising her of the risk she ran, and affording her an opportunity of knowing that he was subjecting her funds to hazard, and depriving her of the means of averting catastrophe to her fortune. He should show that he did so, in order to avoid responsibility for the loss his conduct caused to her. Occupying a fiduciary relation, the statute of limitations cannot avail as a defense; at least, not unless or until a demand and refusal are shown.

Lapse of time is no bar to a trust clearly established. Prevost v. Gratz, 6 Wheat. 481, 5 L. Ed. 311. Is this trust clearly established? I think so. See extract from letter, page 48, transcript:

"It leaves a balance in your favor of $15,000, besides what has accumulated since the estate was fixed up, which I will loan out at about 9 per cent, being the best I can do at present."

Clearly, the ordinary meaning of language will not bear the strain that "loan out" means he will borrow for himself, appropriate to his own use, treat as a personal account. It must be interpreted that he will invest it for her account. He was to "loan out," not to borrow. He had no other instructions. He did not advise her of the risk to which he was subjecting her funds, nor of his mingling the funds with his own indiscriminately: See vol. 2, Trans., p. 70. Mrs. McLean testifies that her sister, Margaret, wanted her brother, Robert, to "lay out" the money. She reposed in him great trust and confidence, which he was bound to use with the utmost discretion. He did not advise her of the hazardous nature of his use of the money, nor of his own failing condition (vol. 2, Trans., pp. 62, 69-70, 77, 78, 80, 85, 86). The evidence is by no means clear, is very vague and unsatisfactory, as to the extent of Mr. Hunter's or of Mrs. Armstrong's knowledge of the facts in time to retrieve conse-

quences of Robert's conduct (vol. 2, Trans., 89, 87½, 103, 104). Altogether, he failed in his duty to protect her interest.

Robert Stevenson was the trustee of Margaret Armstrong; his trusteeship has never been revoked; and the statute of limitations cannot operate in his favor. He is clearly liable for loss. His account should not be allowed as rendered, except the item for attorney's fee, a charge properly and necessarily incurred. Let findings be prepared in conformity with the text of this opinion.

The Decision in the Principal Case was affirmed by the supreme court of California in 69 Cal. 239, 10 Pac. 335, where it is held that a special administrator, who is individually indebted to the decedent, must charge himself in his account with the amount of such indebtedness.