HIGINBOTHAM
v.
BURNET.

HIGINBOTHAM *against* BURNET and others.

Where there is a general demurrer to the whole bill, and it is bad in part, the whole will be overruled.

If a bill be for discovery only, and not for relief, a demurrer to the whole bill is bad.

Where the bill is for discovery and relief, the defendants should answer as to the discovery sought, and demur as to the relief.

*E.*, a soldier, entitled to a lot of land, as a military bounty, in 1785, before the patent issued, by an agreement, sold the lot to *S.*, and bound himself to execute a deed of conveyance. *S.* sold and assigned the lot, bond, &c. in 1789, to *V.*, who, in 1790, by endorsement, sold and assigned the same, and *all his right, title, and interest* in the land, &c. to *C.*, to whom he delivered the original bond, agreement, and discharge of the soldier, and the patent for the lot : *Held*, that although, for want of words of inheritance, the assignment, *in law*, transferred only an estate *for life ;* yet as it was clearly the intention of the parties to convey the whole estate, a *trust estate in fee* was to be considered as created and conveyed; and this Court would, therefore, decree an adequate legal conveyance in fee, according to the intention of the parties, notwithstanding the want of words of inheritance.

That *V.*, in such case, having stood by, for *thirteen* years, after the death of *C.*, and seen his heirs claiming to be owners in fee, under *C.*, and dealing with the land as absolute owners, and making very great and valuable improvements upon the property, without disclosing any claim to the reversion, or any pretension of right or title, he, and all persons claiming under him, were estopped, by his silence, from asserting his legal title.

*February 24.*    THE bill stated, that lot No. 81, in *Manlius*, (part of the military bounty lands,) was patented to *Archibald Elliot*. That on the 17th of *January*, 1785, before the patent was issued, *Elliot*, by an agreement contained in the condition of a bond, sold the lot to *Leonard Smith*, and bound himself to execute a deed of conveyance. On the 4th of *November*, 1789, *Smith*, by an assignment endorsed on the bond, sold and assigned the lot and the bond to *William I. Vredenbergh*. The bond, with the assignment endorsed, was

duly deposited in the office of the Clerk of *Onondaga*, pursuant to the act of 1794. On the 28th of *August*, 1790, *Vredenbergh* sold and assigned the bond, by an endorsement thereon, together with *all his right, title, and interest in and to the land*, to which he was entitled by the said bond, to *John Carpenter :* and *V.*, at the same time, delivered to *Carpenter* the patent for the lot, and *Elliot's* discharge from the army. About the year 1792, *Carpenter* conveyed the lot in fee to *Jeremiah Jackson*, who entered upon it, built a house and mills, and made valuable improvements. On the 25th of *June*, 1799, *Jackson* reconveyed the lot in fee to *Carpenter*, with warranty. *C.* entered on the premises, and continued in possession, until his death, in *February*, 1800. In *February*, 1806, a partition of the lands of *C.* was made among his heirs, pursuant to the statute, and the premises in question were allotted to the share of his son, *Benjamin C.* Ever since the conveyance of *Jackson* to *John C.*, he and his heirs have been in the peaceable occupation of the premises, to the present time. Since his death, (and since the right, if any, of the heirs of *V.* had accrued,) several houses, mills, barns, &c. have been erected on the premises, and other improvements made, to the value of eighteen thousand dollars. That *Vredenbergh*, at the time of the death of *John C.*, lived at *Marcellus*, within twenty miles of the premises, and continued to reside there until his death, in 1813; and he was well acquainted with the improvements making on the premises. The plaintiffs are severally seized in fee of parts of the lot, under *Benjamin C. ;* and the defendants are the children and heirs of *Vredenbergh*.

The bill further stated, that *Vredenbergh*, at all times, and particularly after the death of *John C.*, disclaimed all interest in the lot, declaring that his whole interest had been conveyed to *J. C.*, and that his heirs were seized thereof in fee. That the heirs of *V.* claim the lot, denying that any other than an *estate for life* was conveyed by their father, for want of words of inheritance. But the plaintiffs charged, that

1821.    the conveyance to *J. C.* was intended to create, and did create
         an estate in fee.    That in *May*, 1820, the defendants brought
HIGINBOTHAM
v.       actions of ejectment against the plaintiffs, to recover posses-
BURNET.  sion of the premises.    The plaintiffs prayed a discovery as
to the facts stated in the bill, and for a release from the de-
fendants of any claim to the lot, and that they may be en-
joined, &c. and for other relief, &c.    An injunction was, ac-
cordingly, awarded.

The defendants demurred to the bill : 1. Because the plain-
tiffs claiming to be seized in fee of the premises, under the
conveyance from *V.*, it was a *question of law* only.    2. Be-
cause the bill contained no matter of equity.

*Gold* and *Sill*, for the plaintiffs.

*M. Van Buren*, contra.

THE CHANCELLOR.    This is a demurrer to the whole
bill, and there are two causes of demurrer assigned, (1.)
That the plaintiffs claim to be seized in fee of the premises,
and therefore the matter is properly and exclusively cogniza-
ble at law. (2.) That the bill contains no matter of equity.

Perhaps it would be sufficient to dispose of the demurrer,
by referring to the rule, (*Laight* v. *Morgan*, 1 *Johns. Cases*,
429.) that if a demurrer be general to the whole bill, and be
bad in part, it must be overruled.    If it be good for disco-
very, and not for relief, a general demurrer to the whole
bill is bad.    The defendants should in such a case give the
the discovery, and demur to the relief; and this rule was so
settled, in the case referred to, in the Court of Errors.    I can-
not see any doubt, in this case, of the right of the plaintiffs
to a discovery concerning the deeds charged in the bill to
have been lost, and concerning their contents.

But the bill appears to me to state several distinct and
sufficient heads of equity jurisdiction.

It is easy to perceive, that the real ground of the claim of the defendants, as heirs of *Vredenbergh*, rests on the defective conveyance from him to *John Carpenter*, under whom the plaintiffs claim title ; and that defect consists in the omission of words of inheritance, the want of which, I apprehend, would confine the operation of the assignment, in a Court of law, to an estate for life.   But when the right of the soldier rested originally in equity, and continued so when he conveyed his right to *Smith*, and when *Smith* transferred that right to *Vredenbergh*, and when we consider the charge in the bill that *Vredenbergh* and *Carpenter* negotiated and agreed for the sale and purchase of that entire right, and the circumstances attending the assignment from *V.* to *C.* and the language and mode of the assignment, and the accompanying delivery of the patent and original discharge of the soldier, there is good cause to infer a mistake in that assignment ; and that owing to a defect in drawing it, the intention of the parties was not carried into effect. To remedy this defect, and to prevent an unconscientious advantage being taken of it, may afford a very fit case for equitable interposition.   Under such special circumstances, a trust in fee may be considered as created, which this Court would execute according to the conscience and intention of the parties. There are many cases at common law in which a fee has been held to pass without the word heirs; (*Co. Litt.* 9. *b.*) and if a trust interest in fee *was intended* to be created by the assignment from *V.* to *C.*, in like manner as a trust interest in fee *was conveyed* by the deed from *Elliot* to *Smith*, and by the assignment from *Smith* to *Vredenbergh*, then this Court, according to the doctrine in *Fisher* v. *Fields*, (10 *Johns. Rep.* 495.) would decree an adequate legal conveyance, according to that intention, notwithstanding the want of words of inheritance.

The allegations in the bill on which so much stress has been laid by the counsel for the defendants, that the plain-

tiffs were seized of the land in question, must be understood to mean an equitable, and not a legal seisin.    The whole scope of the bill, and the very fact of coming into this Court, demonstrate this meaning.

The bill also states facts, from which we are to infer, that *Vredenbergh* and his heirs, the present defendants, are equitably estopped from asserting any claim to a reversionary interest in the land.    It is charged, that *V.* after the death of *Carpenter* for 13 years, stood by and saw great and costly improvements made upon the land, by persons claiming, and believing themselves to be owners in fee, under *Carpenter*, and never interposed any pretension of right or title.    It appears from the cases referred to in *Wendell* v. *Van Rensselaer*, (1 *Johns. Ch. Rep.* 354.) that though the right of the party, who thus misleads third persons by his silence, be merely a reversionary interest, and subject to a life estate, in the very person whom he suffers to deal with the property as absolute owner, the rule of equity still applies, that he never shall be permitted to exercise his legal title against such person.    He is bound, and all persons claiming under him, are bound, by his silence.    This case is much stronger than ordinary ones of the kind ; for here the silence was maintained for thirteen years, after the assumed life interest of *Carpenter* had terminated.    If *Carpenter* was bound to know the duration of his title, those who succeeded to the estate, after his death, were certainly encouraged and misled by the studied silence or express admissions of *Vredenbergh ;* and the case as stated, presents one of the strongest claims for the assistance of this Court against the assertion of a title under him by his heirs.    It is to be traced up to imposition and fraud.

The demurrer must, therefore, be overruled with costs, and the defendant ordered to answer.

Order accordingly.