### IN THE

# SUPREME JUDICIAL COURT,

#### IN THE

# COUNTY OF HANCOCK,

##### ARGUED AT JULY TERM, 1845.

---

### NATHANIEL NOYES, JR. *versus* JOHN DYER.

A person who enters upon a tract of land under a deed duly registered from one having no legal title, and continues to improve a part of it, for a sufficient time, thereby obtains a title by disseizin to the extent of the bounds of the whole tract; unless there be other controling facts.

And the result will be the same, if the grantee acquired a perfect title under his deed to that portion of the tract which he occupied and whereon he resided.

If the bound first named in a deed cannot be found, it is competent to ascertain it by first ascertaining the position of some other bound named therein, and tracing the line back from that to the first bound.

A mortgage deed from the grantee, made during the continuance of such occupation, to a third person, describing the land as in his recorded deed, is admissible in evidence, on his part, to show, that he then claimed to be the owner, and that he performed an act of dominion over the whole tract included in his deed.

WRIT OF ENTRY. The description of the land conveyed by the proprietors of township numbered three to John Lee, was in these words: —

" The several lots of land lying within the township aforesaid, which are on the proprietors' plan numbered as follows, in that part of said township called Castine, viz: thirty-nine, forty, forty-one, forty-two and forty-three, containing about three hundred and five acres, bounded, southwesterly on land

possessed by the heirs of John Bakeman, Esq.; easterly on land owned by Rogers Lawrence; northerly, westerly and southerly on Castine harbor and Penobscot bay. Also the following lots of land numbered on the proprietors' plan aforesaid as follows, lying in said Castine, viz; sixty-one, sixty-two, sixty-three, sixty-four, sixty-five, sixty-six, and sixty-seven, containing about seven hundred and twenty-two and an half acres, situated on the southerly part of Cape Roseway, so called; also, one other lot of land numbered on the proprietors' plan aforesaid eighteen, lying in that part of said township called Penobscot, on the east side of Castine River, bounded northerly on land possessed by Mathew Varnum, and southerly on land possessed by Cunningham Lymburner and was originally settled by Gershom Varnum. The whole of said lots being considered as original settlers' lots, and the said Lee the purchaser thereof from said settlers and their assigns." No copy of the plan is found among the papers.

The description in the deed of the proprietors to Francis Bakeman was thus: — "A certain tract or parcel of land lying and being in said Castine, butted and bounded as follows, to wit: Beginning at a birch tree; thence south, 47° east, 200 rods; thence south, 20° west, 254 rods to the marsh; thence up the marsh to a fir tree at the head of the water; thence east, 127 rods; thence north, 20° east, 340 rods; thence north, 45° west, to the north corner of Howard's lot; thence south, 45° west, six rods, to a poplar tree; thence north, 45° west, to the shore; thence southwesterly by the shore to the first mentioned bounds; containing 523 acres, including the one hundred acres awarded the said Francis by the commissioners appointed by a resolve of the general court."

The facts are stated at the commencement of the opinion of the Court. At the trial, before SHEPLEY J. the jury were instructed, that the actual, visible, exclusive and continued occupation and improvement of that part of his lot on which Bakeman lived under a recorded deed of the whole lot, for more than twenty years, with the other evidence in the case, if believed by the jury, constituted a disseizin of the demandant

and those under whom he claimed to the extent of the bounds of the lot as described in the deed. The verdict was for the tenant.

If the Court should be of opinion, that the mortgage deed was improperly admitted, or that the finding of the jury upon the evidence was incorrect, the verdict was to be set aside and a new trial granted.

The case was argued by

*W. Abbott* and *C. J. Abbott,* for the demandant — and by *Hathaway* and *H. Williams,* for the tenant.

The positions contended for on the part of the respective parties are stated in the opinion of the Court. The counsel for the demandant cited 1 Mass. R. 483; 4 Mass. R. 416; 14 Pick. 224; *Little v. Megquier,* 2 Greenl. 176; *Farrar v. Eastman,* 1 Fairf. 191; *Alden v. Gilmore,* 13 Maine R. 178; *Crane v. Marshall,* 16 Maine R. 27; 4 Kent, 475; 2 Wend. 203; 1 Burr. 60; 2 Mass. R. 439; 1 Stark. Ev. 386.

The counsel for the tenant cited *Little v. Libby,* 2 Greenl. 242; *Kennebec Purchase v. Laboree,* 2 Greenl. 275; 11 Pick. 308 and 362; 24 Pick. 242; 3 Metc. 199; 1 Stark. Ev. 66.

The opinion of the Court was drawn up by

SHEPLEY J. — The proprietors of township numbered three conveyed a tract of land, including several lots, to John Lee, by deed executed on August 27, 1802, and recorded June 22, 1805. For the purpose of deciding the questions presented in this case, that conveyance may be considered as including the premises demanded in the action. And the demandant as having regularly deduced his title from it. The same proprietors, by deed executed on November 14, 1808, and recorded on the 28th of the same month, conveyed to Francis Bakeman a tract of land particularly described by metes and bounds; and the jury may have found, that those bounds included between thirty and forty acres of the land previously conveyed to Lee. Bakeman appears to have been upon a part of the tract of land conveyed to him as a settler, when he purchased; and to have continued to reside upon it more than twenty

years, and until his decease; and to have cultivated and improved during that time a part of the tract near his residence, which was about a mile and a half from the premises demanded. They are on the southerly end of the tract conveyed to him, and have not been improved or wholly surrounded by fences. The southwest corner bound of the Bakeman tract was a fir tree at the head of the water. According to the testimony there had been a line designated by marked trees, extending half a mile or more east from it, for twenty-eight or nine years, to which Bakeman had claimed, and by which he had directed a person, who occupied land on the southerly side of it, to be governed. And there was a fence on that line extending east from the stump of the tree seventy or eighty rods. A witness stated, that he had seen Bakeman cutting on the premises two or three times. The bounds of the lots conveyed to Lee were ascertained only by reference to a plan of the township, by which the premises would appear to have been included in one of those lots; but no marked lines or bounds of the lot were found upon the earth northerly of the line, to which Bakeman claimed. After the decease of Bakeman, his widow and administratrix continued his occupation, until by virtue of a license to sell for the payment of his debts she conveyed a part of his lands, including the premises, to the tenant.

In behalf of the tenant it was contended, if the demandant should appear to have the better title by the conveyances, that the title had been destroyed by a disseizin, continued for more than twenty years.

The counsel for the demandant contended, that the jury, from the facts presented in the cause, would not be authorized so to find. They now insist, that the residence and improvements of Bakeman were on land, to which he had an undisputed title, and that they would not, therefore, give notice to any one, that he claimed to own further than such title extended.

That the description of the tract of land conveyed by his deed was so indefinite, that persons owning adjoining lands

would not be informed by the record of it, that it included any of their lands.

And that they could not be expected to examine the records to ascertain whether a person residing on his own land had included in his conveyance a part of their lands.

It was decided upon full consideration, in the case of *The proprietors of the Kennebec Purchase* v. *Laboree*, 2 Greenl. 275, that a person, who enters upon a tract of land under a deed duly registered, from one having no legal title, and continues openly to improve a part of it for a sufficient time, thereby obtains a title by disseizin to the extent of the bounds of his whole tract, unless there be other controling facts. Such has since continued to be the received and settled law in this State.

The position first insisted upon to distinguish this case arising out of the fact, that Bakeman's residence and improvements were on land, to which he had an undisputed title, cannot be admitted to have that effect. He had apparently reason to conclude, when he purchased, that the proprietors had as good a title to the demanded premises, as they had to any portion of the tract included in his deed. He did not purchase of them a lot or lots designated by any number or plan. The record of his deed was legal notice of the extent of his title. If such a state of facts were admitted to destroy the effect of it, the result might often be, that one, who had purchased a tract of land and had continued to reside upon and to cultivate a part of it for more than twenty years, under a recorded deed, might afterward be deprived of any part of it, which had not been surrounded by fences or improved more than twenty years.

Nor can the objection prevail, that the bounds named in his deed were too indefinite to give notice of the extent of his claim. The plan may place the head of the water, where the demandant would desire to have them; but to ascertain where the head of the water named in the deed was, one must examine the condition and state of the water upon the earth. And according to the testimony, the fact might thus be ascertained with little difficulty; as well as the position of the fir

tree at the head of the water; the stump of which is said to be still standing there. No such tree appears to have ever stood at the head of the water as indicated by the plan. From this double designation of the southwest corner bound the line extended east; and it would not seem to have been very difficult to have ascertained and traced it upon the earth. The position of the birch tree, named as the first bound at the northwest corner of the tract, might not be ascertained without first ascertaining the position of some other bound named in the deed, and tracing the line back from that to the first bound; but it could thus be made certain.

Nor can the other objection, that a person under the circumstances named could not be expected to examine the records, prevail. To admit it to be valid would be to impair very materially the effect of a notice by the record. Besides, the objection assumes, that Bakeman would be well known, without any examination to ascertain the position of the bounds of his tract on the earth, to have a better title to all other portions of it, than to the premises; and the testimony does not appear to authorize such a conclusion.

An objection was also made to the introduction of the deed made by Bakeman to Perkins, on October 12, 1820, conveying in mortgage and with the like description the same tract of land. Mr. Starkie, speaking with reference to the possession and enjoyment of disputed property, states, that "written instruments, by which a dominion over such property was exercised," are admissible to explain the nature of such possession and enjoyment. 1 Stark. Ev. 66, (Metc. ed.) The acts and declarations of a person, while in possession of an estate, may be received in evidence to explain the nature and extent of his claim. *Moore* v. *Moore*, 21 Maine R. 350; *Shumway* v. *Holbrook*, 1 Pick. 116; *Van Deusen* v. *Turner*, 12 Pick. 532; *Jackson* v. *McCall*, 10 Johns. R. 380. The deed would seem, therefore, to have been correctly admitted to show, that Bakeman claimed to be the owner, and that he performed an act of dominion over the whole tract included in his deed.

*Judgment on the verdict.*