Johnson, J.
As the widow of Sterry Clark has died since *58 the judgment below, further consideration of her rights in this action becomes unnecessary.
Upon a careful examination of the record, we think the district court was warranted in finding as facts:
1. -That prior to and at the date of said mortgage, and when the property was sold and conveyed to Potter, and for several years thereafter, the mortgaged premises was owned, held, and occupied as one entire tract of land or farm, about forty acres of which was cleared, with a tenement house, fences, etc., such as is usual with a new farm, in a new country, and the balance wild, timbered land.
2. That Potter took possession, under his purchase, of the entire tract, in good faith, claiming the whole, and for more than twenty-five years exercised exclusive control and dominion; that his possession and claim of ownership was open, notorious, and adverse.
3. That, with -the exception of a temporary suspension, the premises wTere, dui’ing all that period, actually occupied by a tenant, residing on the improved part, but such tenancy was interrupted for some time over a year, caused by the unlawful acts of strangers, who tore dowm the house and carried off the fences, rendering the premises incapable of actual residence.
4. That during the suspension of actual residence, as well as at all other times, Potter and his grantees were in the sole control, paying taxes and assessments, making sales, cutting and selling timber, preventing trespasses, and doing all such acts of ownership as the nature and condition of the property would admit of.
5. That at the time of such sale and conveyance to Potter, or soon thereafter, Olney and his grantees, though not actually served, had, in fact, notice of such foreclosure and sale, and of the subsequent adverse possession of Potter, and acquiesced therein, making no offer to redeem, nor any adverse entry or claim.
6. That, at the time of such sale, the land was worth far less than the amount necessary to redeem, and that by reason of the rapid growth of the city of Toledo, of which *59 it now forms a part, and the improvements made by Olney and his grantees, the value far exceeds the mortgaged debt and interest.
"We are of opinion that the district court did not err in refusing the plaintiffs the relief prayed for.
A majority of the court are strongly inclined to hold that the act of March 22, 1849 (2 Curwen, 1494), 'governed, and that the right to redeem was barred in seven years; but as we are all agreed upon another ground, our decision is not placed on that.
There is an absence of equity in the plaintiff’s claim. It is apparent that it is of recent origin, owing its existence to the enterprise which has been generated by the rapid growth of the city of Toledo, and the consequent spirit of speculation to which that gave rise.
It is clear that the immediate grantees of Olney long ago abandoned all intention of redeeming, if they ever entertained it, and for more than twenty-one years acquiesced in the ownership of the mortgagee and those claiming under him.
It is of the very highest authority that: “A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights or acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonably diligeuce. Where these are wanting, the court is passive and does nothing; laches and neglect are always discountenanced; and therefore from the beginning of this jurisdiction there was always a limitation of suit in this court.” Smith v. Clay, 3 Brown Ch. 634; Cholmondeley v. Clinton, 2 Jac. & W. 1; Kane v. Bloodgood, 7 Johns. 93; Bergen v. Bennett, 1 Caines’ Cas. 1; DeCouche v. Sevatia, 3 Johns. 190; Higginbothan v. Burnett, 5 Johns. Ch. 184; Prevost v. Gratz, 6 Wheat. 481; Willison v. Watkins, 3 Pet. 43; Miller v. McIntyre, 6 Pet. 61; Piatt v. Vattier, 9 Pet. 413; 2 Hilliard on Mort. 1-30, and cases cited.
The doctrine of these cases is fully indorsed in Ohio. *60 Tuttle v. Wilson, 10 Ohio, 24; Pendleton v. Galloway, 9 Ohio, 178; Williams v. Presbyterian Church, 1 Ohio St. 478; Robinson v. Fife, 3 Ohio St. 551; Piatt v. Smith’s Fx’r, 12 Ohio St. 561.
Piatt v. Smith’s Ex’rs was, like the present, a bill to redeem, filed by the heirs of Piatt, who bad died insolvent, and whose administrators had declined to redeem and had relinquished the land to the mortgagee. The court says (p. 570): “ The present action was not commenced until twenty-seven years after the time then fixed for the payment of the money; and no tender or offer to pay the money has even as yet been made; but an account is now asked for rents and profits extending back over.a space of more than a quarter of a century. That this is an almost unprecedented delay on the part of the complainants seeking relief in a court of equity must be admitted. How is it explained so as to avoid the objection of gross laches and staleness of claim ?”,
In this case, which was in the nature of a deed and separate defeasance, we may apply the language of the learned judge in that case as peculiarly applicable, substituting only the name of Olney and his grantees for those of Piatt and his heirs.
“No facts are stated or proved, explaining the delinquency of Piatt or his representatives to perform his part of the contract according to its terms. Nor is it either averred or proved that the land was in fact worth as much as the money so to have been paid, to entitle him to a re-conveyance.
“ But even conceding the right to have existed in the grantor after expiration of the time limited by the contract to tender the money due on the note and have a reconveyance of the lands decreed in a court of equity, the assertion of the right must not so long be delayed as to be in conflict with the rule of relief, that the party asking to enforce a contract against another must show himself ready, willing, and prompt in executing the contract on his part, or show some sufficient excuse for his delinquency. *61 Otherwise he will have failed to show such a doing of equity as to justify him in asking relief in a court of equity.”
In Fisher v. Boody, 1 Curtis C. C. 219, it is said: “This distinction between a positive bar from lapse of time and that lying by and acquiescence, which will cause a court of equity to look upon the proofs with some distrust, and to refuse relief unless the delay and acquiescence are satisfactorily accounted for, I consider a most important principle, necessary to be constantly kept in view in wielding the transcendent powers of a court of equity; and it rests upon ample authority, though, in my judgment, it has not been sufficiently regarded.” Prevost v. Gratz, 6 Wheat. 481; Elmendorf v. Taylor, 10 Wheat. 153; Piatt v. Vattier, 9 Peters, 416; Stearns v. Paige, 1 Story, 217; Wagner v. Baird, 7 How. 234; 1 Mad. 99; Lawrence v. Blake, 8 Clark and Pin. 504; Hough v. Richardson, 3 Story, 659.
Where a decree of foreclosure and order of sale was had in 1842, and no further action, save continuances, was had until 1868, meanwhile the mortgagor had been in possession, sold portions of the land to innocent purchasers, who had no actual notice of the pending suit, and who had remained in possession more than twmnty-one years, it was held, that the unexplained delay was §uch as to prevent the enforcement, of the decree against such purchasers. Fox v. Reeder, 28 Ohio St. 181. See also, Hughes v. Edwards, 9 Wheat. 497.
The general rule is, that the right to redemption is barred by the same length of time as the right of entry at law, if the mortgagee is in possession as owner.
To this rule there are some exceptions, as when the mortgagor can bring himself within some one of the disabilities of the statute, such as infancy, etc., or wThere the possession of the mortgagee is referable to an agreement between him and the mortgagor, as in the case of a Welch mortgage, under which the mortgagee is in as a trustee and bound to account.
*62 In such cases the statute does not run. Potter’s possession was not of this character.
It was unmistakably adverse to the right of redemption.
He was occupying and exercising acts of ownership under color of his title acquired by purchase at sheriff’s sale. The proceedings to foreclose, the purchase and possession, the payment of taxes and assessments, the employment of an agent to look after the lands, are all acts adverse to those of the mortgagor, and referable solely to his title as owner under the mortgage.
They are explanatory of Ms title and give character and significance to Ms possession.
"We do not propose to consider the mooted question, whether a less period than twenty-one years, will bar the right of redemption.
It is sufficient to say that if there was such a possession for more than twenty-one years, as would bar ejectment, the district court did not err.
“An entry under a deed gives possession of all vacant land described in the deed, if not in any adverse possession; although there may be no fences or inclosure around the ambit of the tract, and an actual entrance on only a part of it. To constitute actual possession it is not necessary there should be any fence or inclosure of the land.” Ellicott v. Pearl, 10 Peters, 412.
“ One who enters upon land intending to take possession of the entire tract, no part of which is held adversely at the time of entry, is in possession to the extent of his claim.” Langworthy v. Myers, 4 Iowa, 18; Booth v. Small, 25 Iowa, 178; Owing v. Gibson, 2 A. K. Marsh. 460; Little v. Dowling, 37 N. H. 355.
The distinction between an entry and possession under color of title, as in the present case, and such entry and possession without deed or color of title, is clear and well recognized.
In the former case, the possession is by construction held to extend to the boundaries of the deed; in the latter, it must be actual, definite, positive, and notorious, a pedes pos *63 sessio. Ewinq v. Burnett, 11 Peters. 49; Angel on Lim. 398, 402.
In Ewing v. Burnett it is said: “An entry by one man, on the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done; if made under claim and color of right, it is an ouster ; otherwise it is a mere trespass; in legal language, the intention guides the entry and fixes its character. That the evidence in this ease justified the jury in finding an entry by the defendant on this lot as early as 1804, can not be doubted; nor that he claimed the exclusive right to it, under color of title, from that time till suit brought. There was abundant evidence of the intention with which the first entry was made, as well as of the subsequent acts related by the witnesses to justify the finding, that they were in assertion of a right in himself; so that the only inquiry is as to the nature of the possession kept up. It is well settled, that to constitute an adverse possession, there need not be a fence, building, or other improvements made. 10 Pet. 442; it suffices for the purpose that visible and notorious acts of ownership are exercised over the premises in controversy for twenty-one years, after an entry under claim and color of title. So much, depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule, adapted to all eases. But it may safely be said, that where acts of ownership have been done upon land, lohich from their nature indicate a notorious claim of property in it, and are continued for twenty-one years, with the knowledge of an adverse claimant without interruption, or an adverse entry by him, for twenty-one years; such acts are evidence of an ouster of a former owner, and an actual adverse possession against him.”
The principle upon which the limitation operates, is, that the' adverse claim is accompanied by such an invasion of the rights of the opposite party as to give him a cause of action, which he has failed to prosecute within the time *64 limited by law, and which he is therefore presumed to have surrendered or abandoned.
As the character of the possession depends on the nature and situation of the property, and the uses to which it can be applied, or to which the owner may choose to apply it, it is evident that resort must be had to the usual and ordinary conduct of owners of such land to determine if it is sufficient.
If this possession compoi’ts with the ordinary management of similar lands by their owners, it furnishes satisfactory evidence of adverse occupation.
When the land is partly improved and partly unimproved, an entry, even under a void deed, describing the whole, and acts of ownership under color of title derived from this deed over the whole — such as payment of taxes, preventing trespasses on the unimproved part, and using the improved part —is satisfactory evidence of adverse occupancy, when the opposite party, with knowledge of these acts, makes no claim, but acquiesces for more than twenty-one years. Angeli on Limitations, § 398; Noyes v. Dyer, 25 Me. 468; Kennebeck v. Laboree, 2 Me. 275; Spear v. Ralph, 14 Vt. 400; Chisholm v. Bullolph, 12 Vt. 231; Proprietors v. Springer, 4 Mass. 415.
Counsel for plaintiffs strenuously insist that as to the forty acres not sold in 1853 to Baker and Prentice, there has not been that continued possession requisite.
The deed to the whole tract was executed December 4, 1844. Prior to that, Potter had employed an agent to look after the property, and had paid taxes since 1843.
The improved part, mostly these forty acres, had been continuously occupied by tenants since the spring of 1845 to the winter of 1863-4, when the house was torn down by the neighbors by reason of objectionable tenants to whom it had been sublet, and the material was afterward moved off by the tenant in April, 1864.
About the same time piost of the fencing was stolen for firewood, and the greater part of the cleared land was an open common. It also appears that from the time the *65 house was pulled down, in the winter of 1863-4 to the spring of 1865, no tenant actually resided on the land, although during all that time the mortgagee, through his agent, continued to pay taxes aiid to exercise all other acts of ownership and control that was possible under the circumstances.
No intention was entertained of abandoning the property. No adverse entry or claim was then or at any time made. There was no disseizin or ouster. The acts of a mob and of thieves had made it temporarily ipifit for actual residence.
Surely there is no principle of either law or equity that would make these acts of lawlessness and violence inure to the advantage of the plaintiffs. In such case, when there is no abandonment or ouster, nor any offer to redeem, the plaintiffs’ adverse possession continues, though he has no tenant residing thereon, if he exercises all those acts of adverse claim of which the property is capable. The single fact that during the space of a year no tenant actually resided on the tract, does not operate to break the continuity of possession, when, as in this case, there was no adverse entry by the owner of the legal title or those claiming under an adverse title, and when there were continuous acts of ownership comporting with the condition of the property.
The principle on which the statute is predicated, is not that the party in whose favor it is invoked has set up an adverse claim for the period specified, but that such adverse claim is accompanied by such invasion of the rights of the opposite party as to give him a cause of action. Angelí on Lim., § 390. It is the occupation with an intent to claim against the true owner, which renders the entry and possession adverse.
Where the first possessor died, and his heirs were driven from the actual possession by a public enemy, the possession was considered by the equity of the jus post limmiv as *66 revested in the heirs on the removal of the hostile force. Smith v. Lorillard, 10 Johns. 338.
A continued residence on the land is not necessary, if it has been inclosed and used in such manner as to give publicity to the possession. Making improvements, or receiving rents would be sufficient without evidence. Angell on Lim, § 392.
In Macentile v. Savoy, 17 Serg. & Rawle, 104, it was held, in the case of a dwelling-house in a city, that direct proof of occupancy during the whole period is not necessary, and that the possession continues, although the house may not be occupied during the whole period without intermission.

Judgment of the district court affirmed.