WARREN N. TRUSDELL

*v.*

CHARLES A. LEHMAN et al.

1. A deed which contains no words of inheritance conveys only a life estate to the grantee.

2. Where it clearly appears that a deed, drawn professedly to carry out the agreement of the parties previously entered into, is executed under the misapprehension that it really embodies the agreement, whereas, by mistake of the draftsman, either as to fact or law, it fails to fulfill that purpose, equity will correct the mistake by reforming the instrument in accordance with the contract.

3. Where words of inheritance are omitted by mistake from a conveyance, contrary to the intention of the parties, a trust in fee may be considered as created, which a court of equity will execute according to the conscience and intention of the parties.

4. A judgment at law does not constitute a lien upon an equitable interest.

5. Equity will intervene in behalf of a judgment creditor, in pursuance of the statute and as auxiliary to law, to remove a legal impediment which may be subject to some special branch of equity jurisdiction.

6. It will intervene to remove an impediment created by a mistake which falls within its cognizance, as well as one which is the result of fraud.

7. Where, however, the legal title has become vested in a *bona fide* purchaser for value, while complainant, the judgment creditor, was sleeping on his rights, the court will not interfere.

On final hearing on bill, answers and proofs taken in open court.

Trusdell *v.* Lehman.

*Mr. Robert H. McCarter,* for the complainant.

*Mr. Frank M. McDermit,* for Lehman.

*Mr. John O. H. Pitney,* for infant defendants.

Green, V. C.

Warren N. Trusdell, April 11th, 1878, obtained a judgment in the supreme court of this state against Michael R. Kenny and others for $296.41. Execution was issued and returned unsatisfied, and the whole amount of the judgment remains unpaid.

Bridget E. Cheshire, by a deed of bargain and sale dated January 12th, 1875, conveyed to the said Michael R. Kenny certain property in the city of Newark abutting on French and Peat streets, consisting of four lots, the whole tract being one hundred feet square. The property seems to be still unimproved and unoccupied. The deed referred to contains no words of inheritance, being drawn to the grantee and his assigns, not to his heirs, and therefore conveyed only a life estate to Michael R. Kenny. *Kearney* v. *Macomb, 1 C. E. Gr. 189; Weller* v. *Rolason, 2 C. E. Gr. 13.*

Michael R. Kenny died intestate ten or twelve years ago, leaving Horace J. Kenny, Cecelia R., wife of John A. Flintoft, James Kenny, Lignori Kenny and Sylvester J. Kenny, his children and heirs at law. Cecelia R. Flintoft died before the filing of this bill, leaving George S. Flintoft and Cecelia K. Flintoft, the infant defendants, her heirs at law.

Sylvester J. Kenny, Lignori Kenny and Horace J. Kenny, after their father's death, executed and delivered to Frank M. McDermit a deed of bargain and sale, dated October 24th, 1889, for the equal undivided three-fourths part of the said tract.

Bridget E. Cheshire, the original grantor, by deed of bargain and sale dated November 23d, 1889, conveyed the four lots to Sylvester J. Kenny in fee. He, by like deed of same date, conveyed to Frank M. McDermit, who, by like deed dated November 30th, 1889, conveyed the same to the defendant Charles A. Lehman.

Trusdell *v.* Lehman.

The bill alleges that while the original deed from Bridget E. ·Cheshire to Michael R. Kenny in fact only conveyed a life estate, the parties to it intended that it should convey an estate in fee :simple, but by a clerical mistake the word "heirs" was omitted from the granting and *habendum* clauses, of which omission both the grantor and grantee were ignorant, and always supposed the ·deed conveyed an absolute estate of inheritance. It prays that the deed be reformed by inserting the word "heirs," so that an ·estate in fee simple may be decreed to have passed thereby, in .accordance with the intention of the parties; and that after such reformation the said land may be charged with liability for the :payment of complainant's said judgment.

There can be no doubt that Bridget E. Cheshire sold, and Michael R. Kenny bought, the fee of the premises, and that they ·intended and supposed the original deed conveyed such an estate. 'That he so believed is shown by the fact that, three days after .its date, he conveyed a portion of it in fee to the city of Newark for the purposes of a street.

Bridget E. Cheshire has been examined as a witness, and testi-:fied that when she sold the property to Michael R. Kenny and made a deed to him, she sold all her interest in the land to him —she "sold it out and out;" that she signed the second deed to ·Sylvester J. Kenny because she was told, by those who brought it to her, that a word was missing in the first deed, and that she :never before knew there was a mistake in the first deed; that she was paid nothing for the last conveyance. It is clear it was the intention of the parties to convey the fee, and that the omission ·of the word of inheritance was not by the act or procurement, or with the knowledge, of either of them, and that the deed did not .accomplish the intention of the parties through the mistake of the draftsman. The satisfactory proof of these facts would warrant a decree that the deed should be reformed, if the proper parties are in court, and no interests have intervened which are entitled to prior protection. *Kearney* v. *Macomb, 1 C. E. Gr. 189; Weller* v. *Rolason, 2 C. E. Gr. 13; Wanner* v. *Sisson, 2 Stew. Eq. 141.* Where it clearly appears that a deed, drawn professedly :to carry out the agreement of the parties previously entered into,

Trusdell *v.* Lehman.

is executed under the misapprehension that it really embodies. the agreement, whereas, by mistake of the draftsman, either as to fact or law, it fails to fulfill that purpose, equity will correct the mistake by reforming the instrument in accordance with the contract.  *Wintermute's Exrs.* v. *Snyder's Exrs., 2 Gr. Ch. 489, 500; Hendrickson* v. *Ivins, Sax. 562, 568; Hopper* v. *Lutkins, 3: Gr. Ch. 149, 154; Green* v. *Morris and Essex R. R. Co., 1 Beas. 165; Hunt* v. *Rousmaniere's Admrs., 1 Pet. 1, 13; Higginbotham* v. *Burnet, 5 Johns. Ch. 184; Fisher* v. *Fields, 10 Johns. 495; Story Eq. Jur.* § *115.*

Is the complainant in a position to ask this court to make such a decree?

He is a judgment creditor of Michael R. Kenny.  During Kenny's life and the continuance of the life estate, that interest was subject to levy and sale under execution on the judgment; but the interest which Kenny had in the fee was an equitable one only.  Where words of inheritance are omitted by mistake from a conveyance, contrary to the intention of the parties, a trust in fee may be considered as created, which a court of equity will execute according to the conscience and intention of the parties. *Higginbotham* v. *Burnet, 5 Johns. Ch. 184, 189.*  Being an equitable interest only, the judgment and execution did not constitute a lien thereon.  At Kenny's death all that passed to his heirs was this equitable interest, not directly subject to the judgment of the complainant.  *Disborough* v. *Outcalt, Sax. 298, 304; Woodruff* v. *Johnson, 4 Halst. Ch. 729; Halsted* v. *Davison, 2 Stock. 290; Vancleve* v. *Groves, 3 Gr. Ch. 330.*

The judgment not being a lien, complainant was unable to enforce it against this property after Kenny's death, because the fee, by the mistake referred to, remained vested in Bridget Cheshire.  Equity will intervene in behalf of a judgment creditor, in pursuance of the statute and as auxiliary to law, to remove a legal impediment which may be subject to some special branch of equity jurisdiction.  Mr. Justice Depue, in *Hardenburgh* v. *Blair, 3 Stew. Eq. 658,* says : " The powers of the court were simply in aid of the judgment creditor where a trust had been interposed which obstructed the operation of the process of a

court of law, and extended only to such property as, save for the interposition of the legal obstruction, might have been reached by such process." *Neate* v. *The Duke of Marlborough, 3 Myl. & C. 416.* The chancellor, in *Disborough* v. *Outcalt, Sax. 298,* says: "Courts of equity will, in some cases, aid execution creditors to obtain satisfaction of their demands. It has for this purpose a suppletory power. But, to warrant their interference, there must be some equitable ground presented. The case must be infected with fraud, or it must involve some trust or other matter of peculiar equity jurisdiction. The court will then act on its own established principles, and afford such relief as the situation of the parties requires, and the nature of the case will admit."

If the condition of the title to the premises in question had been created by Michael R. Kenny intentionally, and for the purpose of defrauding his creditors, equity would, in the exercise of its jurisdiction to prevent fraud, have lent its aid to remove the impediment. In such a case, the defendant by his own act so places the title that it cannot be reached by his creditors. This is of course a fraud as to them. Having obtained a judgment, the creditor is prevented from reaching the property by execution by the impediment thus interposed by the fraud of his debtor; and the prevention of the successful perpetration of fraud being one of the grounds of equity jurisdiction, the court will exercise it to remove the obstacle, and aid the judgment creditor in the collection of his claim. The element of fraud was wanting in the case of *Disborough* v. *Outcalt, supra,* and for that reason the court withheld its arm. In *Woodruff* v. *Johnston, supra,* the court proceeded against the property which represented the defendant's expenditure, on the ground that it would be a fraud to permit him to so secure his own individual property from his creditors. But the correction of a mistake, where it has occurred under certain conditions, is also a branch of equity jurisdiction. The mistake in the case in hand is one which falls within the rules which invoke the exercise of that power. An impediment to the collection of the debt of a judgment creditor by execution is created, not by the fraud, but by such a mistake of the parties. While I find no case similar, it is clear,

Trusdell *v.* Lehman.

on principle, that the power of the court should be exercised to remove an obstacle to the operation of the execution, created by such mistake, as well as in the case of fraud, and that the complainant would be entitled to the aid of the court if the rights of others which have been acquired do not deprive him of its exercise.

The legal title being in the defendant Lehman, the question presents itself, is the equity of the complainant superior to the rights which are vested in Lehman; and this depends on whether Lehman was a *bona fide* purchaser for value of the property.

The evidence shows that the value of the property was about $1,000, and that it was subject to the lien of taxes under the Martin act to the amount of $350.

The interest of the defendant Lehman was acquired under the following circumstances: Horace J. Kenny, a son of Michael R. Kenny, boarded with the defendant Lehman, and became indebted to him in the sum of $205. Lehman refusing to trust him further, Horace procured from his sister, Mrs. Flintoft, her note for $225, which he paid to Lehman in discharge of his debt, receiving the balance in cash. Suit had been brought against Horace J. Kenny by a Mr. Colie, in settlement of which the defendant McDermit gave his own note for $100. McDermit had also loaned money to Horace at various times, and took the conveyance from the Kenny heirs to secure this indebtedness. Lehman claims to have advanced to Horace $25 on the strength of McDermit having this deed. McDermit then had a search of the title made, and discovered that the original deed only conveyed a life estate to Michael, and told Lehman not to give Horace any more money, because there was something the matter with the title. On McDermit informing Horace of the defect in the title, the second deed was procured from Mrs. Cheshire, to Sylvester J. Kenny. McDermit says he knew absolutely nothing as to how Sylvester obtained that deed, or the circumstances under which he obtained it. After Sylvester conveyed to Mr. McDermit, the latter told Horace if he would agree to discharge his indebtedness to Lehman, as the title was now clear, he thought he could induce Lehman to buy the property, so that

Horace could pay his debts and get some cash. McDermit says he acted for Horace in the matter; that he told Lehman he could give him a good, clear title; that Lehman had no notice of any judgment, no notice of any lien ; that he did not consider it necessary to give him any notice of any such judgment, because he did not regard it as a lien against the property. McDermit negotiated a sale of the lots to Lehman, and conveyed them to him by the deed dated November 30th, 1889. Lehman, in pursuance of his agreement, and as consideration for the conveyance, gave up the $225 Flintoft note, paid Horace $100 on receiving the deed, and in a day or so settled the balance of the consideration, including a loan of $25, by discharging his indebtedness and paying him some $200 in cash. He assumed the payment of taxes amounting to $350, and the Colie note of $100. He has since given Colie his own note for $100 and has paid the taxes ; the whole consideration being the value of the property as sworn to by McDermit, and not questioned.

The complainant claims that Lehman was not a *bona fide* purchaser, and should be postponed to his judgment because he is chargeable with notice of complainant's claim. The evidence is, that Lehman's deed was delivered prior to any actual notice of any claim on the part of complainant.

It is urged that McDermit was Lehman's counsel, and that the latter is chargeable with such notice as McDermit had.

They both deny that McDermit was Lehman's counsel in the matter, and the evidence fails to establish the relation of counsel and client between them as to this transaction.

But if it were as contended, McDermit only had notice of what he had learned from the record, and Lehman was bound to have advised himself of the condition of the title as shown by the record.

Mr. Justice Dixon, in *Roll* v. *Rea, 21 Vr. 268,* says: One claiming title to lands " is undoubtedly chargeable with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derived his title, and also with notice of whatever matters he would have learned by any inquiry which the

recitals of those instruments made it his duty to pursue." And again : " Parties dealing with real estate may always lawfully assume that the title is completely disclosed on the records, unless there is some circumstance of which they are bound to take notice, which would apprise a reasonable man, not merely that the records may be defective, for that is always possible, but that they actually are so in the particular case in hand."

Complainant's equity is based on the fact that the conveyance from Bridget Cheshire to Michael R. Kenny was intended by the parties to convey the fee, but, by mistake of the draftsman, only conveyed a life estate. What notice of this condition could be developed by an examination of the records?

The record disclosed the complainant's judgment, and that Michael R. Kenny had only a life estate in the property ; but the creation of a life estate is certainly not such a peculiar fact as to require a prudent man to inquire into its reason, or the circumstances connected with its creation. Much is claimed, as a warning, from the fact that on the record a blank occurs where the word " heirs " would be properly written, but the existence of such blank would, to most minds, indicate that the word was purposely omitted, rather than that its omission was the result of carelessness or mistake.

It is urged that the deed from Michael R. Kenny to the city of Newark in fee of a strip of the land was a circumstance showing that he considered his title complete ; but when the conveyances to McDermit and Lehman were made, Michael R. Kenny was dead, and the conveyance to him being only for a life estate, which was of course terminated by his death, what he had done during the term of his life estate could not affect the title after its termination, and there was no reason to search for what he had done during its existence, so that all the notice with which Lehman is chargeable, was the conveyance of a life estate by Bridget Cheshire to Michael R. Kenny, the entry of the complainant's judgment, the conveyance to Sylvester J. Kenny and that to Frank M. McDermit.

This is far short of complainant's case, that the original con-

Trusdell *v.* Lehman.

veyance was intended by the parties as one in fee which had been defeated by a mistake of the draftsman.

The complainant is chargeable with notice of everything that Lehman is. The record was as much notice to him as to the defendant. He has slept on his rights since April, 1878. All of the events or conveyances which he now claims should have opened the eyes of Lehman to the fact that his judgment should, in equity, be enforced against this property, existed, and were as apparent then as now. *Vigilantibus, non dormientibus, equitas subvenit.*

These considerations lead to the conclusion that complainant has no equity which is superior to Lehman's title, and that the bill must be dismissed.

The conveyance to Sylvester J. Kenny may have enured to the benefit of the infant defendants, but their rights cannot be adjudicated in this suit if the complainant's case fails.